No. 17-55036

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JORGE ALEJANDRO ROJAS,
Plaintiff-Appellant,

v.

FEDERAL AVIATION ADMINISTRATION,
Defendant-Appellee.

On Appeal from the United States District Court
for the Central District of California

# BRIEF AMICI CURIAE OF
## THE PROJECT ON GOVERNMENT OVERSIGHT
## IN SUPPORT OF PLAINTIFF-APPELLANT

Gregg P. Leslie
    *Counsel of Record*
Samuel Turner*
John Dragovits*
First Amendment Clinic,
    Arizona State University
    Sandra Day O'Connor
    College of Law
111 E. Taylor St., Mailcode 8820
Phoenix, AZ 85004
(480) 727-7398
* Law students appearing pursuant to
  Cir. R. 46-4

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A),

*amicus curiae* Project on Government Oversight certifies that it has no parent

corporations or any publicly held corporations owning 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................... 2

TABLE OF AUTHORITIES ............................................................... 4

INTEREST OF AMICUS CURIAE ..................................................... 7

INTRODUCTION AND SUMMARY OF ARGUMENT ..................................... 8

ARGUMENT ............................................................................. 9

    I.    Adopting the consultant corollary will allow agencies to exempt a wide array of records from disclosure ...................................................... 9

    II.    Exemption 5 should be construed narrowly in accordance with the original meaning of the statutory text ................................................. 13

    III.    Courts must consider that the foreseeable harm caused by secrecy will significantly outweigh any potential harm to general agency-contractor relations ...................................................... 19

    IV.    The consultant corollary should not prevent the public from accessing documents cloaked as confidential discovery ......................... 21

CONCLUSION ........................................................................ 22

CERTIFICATE OF COMPLIANCE ................................................... 23

# TABLE OF AUTHORITIES

**CASES**

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143
(2d Cir. 2010) ............................................................................ 14

*Consumers Union of U. S., Inc. v. Heimann,* 589 F.2d 531 (D.C. Cir. 1978) ...... 16

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051
(D.C. Cir. 1981) ......................................................................... 17

*Dept. of Air Force v. Rose,* 425 U.S. 352 (1976) .................................... 9

*Dept. of Int. v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001) .......... 20

*Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615 (1982) ................. 13, 17

*Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*,
443 U.S. 340 (1979) .................................................................. 13

*Food Marketing Institute v. Argus Leader Media,* 588 U.S. ___,
139 S. Ct. 2356 (2019) ............................................................... 15

*FTC v. Grolier, Inc.*, 462 U.S. 19 (1983) ........................................... 13

*Gov't Land Bank v. Gen. Servs. Admin.,* 671 F.2d 663 (1st Cir. 1982) ............... 16

*Hanson v. U.S. Agency for Intern. Dev.,* 372 F.3d 286 (4th Cir. 2004) ............... 16

*Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132 (5th Cir. 1980) ............. 10, 16

*Judicial Watch, Inc. v. U.S. Dept. of Com.*, 375 F. Supp. 3d 93
(D.D.C. 2019) ....................................................................... 19, 20

*Lead Indus. Ass'n Inc. v. OSHA,* 610 F.2d 70 (2d Cir. 1979) ........................ 16

*Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017) ............. 19

*Milner v. Department of Navy,* 562 U.S. 562 (2011) .............................. 16, 17

*N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214 (1978)............................. 9

*Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677
    (D.D.C. 2008) ............................................ 11

*Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).... 15

*Rojas v. Fed. Aviation Administration*, 927 F.3d 1046 (9th Cir. 2019),
    reh'g en banc granted, 948 F.3d 952 (9th Cir. 2020) ................................... 21

*Ryan v. Dep't of Justice,* 617 F.2d 781 (D.C. Cir. 1980) .................................. 16

*Stewart v. U.S. Dep't of Int.,* 554 F.3d 1236 (10th Cir. 2009)............................ 16

*U.S. v. Weber Aircraft Corp.,* 465 U.S. 792 (1984).................................. 18, 20, 21

*U.S. Dep't of Justice v. Julian,* 486 U.S. 1 (1988)................................. 17

*U.S. Dep't of Justice v. Landano,* 508 U.S. 165 (1993) ....................................... 18

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ......................... 13, 22

## STATUTES

5 U.S.C. § 551(1) .............................................. 13

5 U.S.C. § 522(b)(5).......................................... 9

5 U.S.C. § 552(b)(4)........................................... 14

5 U.S.C. § 552(b)(8)....................................... 14, 16

5 U.S.C. § 552(f)(1) ........................................ 13

48 CFR § 7.503(c)(9).......................................... 11

48 CFR § 2.101 .............................................. 11

Fed. R. Civ. P. 26(b)(4)(D) ....................................................................... 21

**OTHER AUTHORITIES**

Nick Schwellenbach and Sean Moulton, *The "Most Abused" Freedom of Information Act Exemption Still Needs to be Reined In*, Project on Government Oversight, Feb. 6, 2020, available at https://perma.cc/6SYZ-5CNR ...................................................................... 10

Barry Sullivan, FOIA and the First Amendment: Representative Democracy and the People's Elusive "Right to Know", 72 Md. L. Rev. 1, 74 (2012) ........... 17

# STATEMENT OF IDENTITY OF *AMICI*

Founded in 1981, the Project on Government Oversight (POGO) is a nonpartisan independent watchdog that investigates and exposes waste, corruption, abuse of power, and when the government fails to serve the public or silences those who report wrongdoing. We champion reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO investigates corruption, misconduct, and conflicts of interest in the federal government, and in doing so it relies on the Freedom of Information Act. POGO had found that in many cases, the nondisclosure of government records has to do with hiding corruption, intentional wrongdoing, or gross mismanagement by the government or its contractors. POGO strongly believes that sunshine is the best disinfectant, and that we must empower citizens with information and tools to hold a local, state, or federal government accountable.

*Amici* received the consent of all parties to file this brief.

***Authorship and assistance:*** Pursuant to Fed. R. App. P. 29(a)(4)(E), amici state as follows: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and (3) no person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case offers this Court an opportunity to reinforce the public's ability to be informed about the workings of the federal government and to hold its agencies accountable. The "consultant corollary" doctrine at issue here is fundamentally averse to the purpose of FOIA, and its ratification by the Ninth Circuit would be significantly detrimental to an informed citizenry.

This case involves a consultant, Applied Psychological Techniques, Inc. ("APTMetrics"), that apparently had wide latitude in developing a hiring test that was used to deny individuals like Plaintiff Jorge Alejandro Rojas ("Rojas") an Air Traffic Control Specialist position with the Federal Aviation Administration ("FAA"). The FAA here wants to withhold reports that APTMetrics created about its criteria and process for evaluating candidates, suggesting that the agency would have no meaningful information about how its own specialists are hired if it had not requested the reports from a contractor in anticipation of litigation.

This Court has the opportunity to rein in government agencies' tendencies to deny records requests under the increasingly expanding Exemption 5. By construing the text of Exemption 5 narrowly, as was originally intended, the Ninth Circuit can mitigate the severe harm that will be caused by the government's overbroad interpretation of the statute.

## ARGUMENT

**I.**     **Adopting the consultant corollary will allow agencies to exempt a wide array of records from disclosure.**

The basic purpose of the Freedom of Information Act is to open agency action to the light of public scrutiny. *Department of Air Force v. Rose,* 425 U.S. 352, 372 (1976). This serves to ensure an informed citizenry, vital to the functioning of a democratic society, and is needed to check against corruption and to hold the governors accountable to the governed. *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978). These interests are implicated whenever governmental functions are involved, no less so when the government has contracted with private entities to assist in these functions.

The public has a particularly strong interest in being able to understand and oversee how private entities carry out public functions. Exemption 5 exempts from FOIA "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 522(b)(5). This exemption implicates FOIA's core statutory purpose: to open agency action to the light of public scrutiny. If Exemption 5 is construed so broadly that it can exempt any records provided by private companies that are designated as "prepared in anticipation of litigation," it threatens to undermine the core purpose of FOIA.

Although Exemption 5 is not the most used exemption, it has been regarded as the most "problematic" exemption and referred to as the "withhold it because you want to" exemption. Nick Schwellenbach and Sean Moulton, *The "Most Abused" Freedom of Information Act Exemption Still Needs to be Reined In*, Project on Government Oversight, Feb. 6, 2020, available at https://perma.cc/6SYZ-5CNR. Agencies have stretched the exemption to inappropriately encompass information not originally intended for protection, including but not limited to records that may paint the agency in bad light, records that reveal problems, and records that contain embarrassing information. *Id.* The overuse of exemptions severely limits publicly accessible information, and most requesters do not have the resources to litigate them. Allowing agencies to use Exemption 5 as a way to avoid disclosing embarrassing or politically problematic records directly contradicts FOIA's core objective of holding agencies accountable.

Applying Exemption 5 to situations in which consultants perform run-of-the-mill duties that are squarely within the wherewithal of an agency creates the potential for abuse by agencies. Where other circuits have applied the "consultant corollary" to contractors' work, it has often been in situations where a consultant is performing a duty outside the wherewithal or expertise of an agency. *See Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1138 (5th Cir. 1980) (holding that an

appraisal report that an agency purchased from a nongovernment consultant was exempted under Exemption 5 because agencies "may have a special need for the opinions and recommendations of temporary consultants" (internal quotation marks omitted)); *Nat'l Inst. of Military Justice v. U.S. Dep't of Defense*, 512 F.3d 677, 682-83 (D.D.C. 2008) ("federal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling their knotty complexities." (internal quotation marks omitted)). The Courts reasoned that the use of Exemption 5 in these instances was grounded in the need to promote frank discussions with contractors on matters clearly outside the wherewithal of an agency.

In the present case, the FAA is hiding behind the consultant corollary to prevent documents ordinarily releasable but for the improper expansion of Exemption 5. The ability to make hiring decisions is well within the means of any organization. Further, "[t]he selection or non-selection of individuals for Federal Government employment, including the interviewing of individuals for employment" is an "inherent governmental function." 48 C.F.R. § 7.503(c)(9). An "inherent government function" is so intimately related to the public interest as to mandate performance by Government employees. 48 § CFR 2.101. The hiring procedure of Air Traffic Control Specialists is such an "inherent governmental function" that it would have necessitated disclosure to the public without FAA's

reliance on APTMetrics. Additionally, the FAA's outsourcing of these hiring tasks was not necessary for the FAA to function. The FAA should not be able to shield records pertaining to hiring merely because it outsources some hiring tasks to third party consultants. The consultant corollary unlawfully expands the kinds of records that can be withheld because it treats the same type of documents differently depending on whether they were created by the agency or a consultant.

The version of the consultant corollary adopted by the District Court violates the public good sought by FOIA. Following this interpretation, the FAA may merely ask for summaries under the guise of litigation, shrouding what potentially could be a discretionary screening system in secrecy, and offshoring the records to consultants that cannot be reached by the public or the media. It should be the government's responsibility to show that it is not using the discriminatory test to arbitrarily or unjustifiably weed out applicants. Refusing to disclose these records leaves the public with absolutely no idea what kind of psychological testing is done on applicants for air traffic control jobs, and the impression that the agency itself has no knowledge of how the contractor performs this work. Without this knowledge, and the ability to obtain it, the public loses its ability to be informed and hold the federal government accountable.

## II. Exemption 5 should be construed narrowly in accordance with the original meaning of the statutory text.

The Supreme Court has fairly interpreted Exemption 5 to allow agencies to claim some of the privileges that they receive in litigation, including the deliberative process privilege. *See FTC v. Grolier, Inc.*, 462 U.S. 19, 32 (1983). *But see Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 354 (1979) (noting that it was "not clear that Exemption 5 was intended to incorporate every privilege known to civil discovery" and that extending Exemption 5 to new privileges should be "viewed with caution"). FOIA eliminates any doubt that a reasonable reading of "inter-agency or intra-agency" could cover third parties. It defines "agency" as "each authority of the Government of the United States" in the executive branch, including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the Executive Branch of the Government… or any independent regulatory agency." 5 U.S.C. § 551(1), 552(f)(1). Courts have consistently construed the FOIA's exemptions narrowly. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989); *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 630 (1982). It follows that third parties plainly fall outside this definition.

If Congress intended to shroud memorandums or letters shared among agencies and third-party consultants in secrecy, Exemption 5 would have explicitly protected communications with outsiders. This is demonstrated most clearly by the fact that Exemptions 4 and 8 contain statutory language that contemplates withholding information received from third parties. Exemption 4 applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 8 applies to information "contained in or related to examination, operating or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8). Conversely, Exemption 5 does not contain a provision accounting for outside communication. As a result, it is clear Congress did not intend to shield memoranda or letters shared among agencies and third-party consultants.

A closer examination of Exemption 4's plain language, concentrating on the phrase "obtained from a person," shows congressional intent to protect communications with outsiders. Courts have read the requirement that information be 'obtained from a person' to restrict the exemption's application to data which have not been generated within the Government. *See, e.g., Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 148 (2d Cir. 2010) (quoting *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 403-04 (D.C.

Cir. 1980)). While Exemption 4 provides a discernable roadmap to follow when information is shared with third parties, Exemption 5 does not address outside communications. The consultant corollary should not be contorted to fit within the strict statutory construction of Exemption 5.

Since Exemption 4 lacked a definition as to what constituted "confidential" information, the Supreme Court recently had to determine how broadly to construe its meaning and chose to apply a strict textual reading that avoided the broader interpretation that many courts had been applying. In *Food Marketing Institute v. Argus Leader Media*, the Court held that "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Marketing Institute v. Argus Leader Media,* 588 U.S. ___, 139 S. Ct. 2356, 2366 (2019). Prior to *Argus Leader Media*, most courts had required evidence that release of information would result in some kind of competitive harm to the information's source for it to be considered "confidential," based on a long-standing D.C. Circuit decision. *See Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974). Conversely, Exemption 5 explicitly provides a definition for the term "agency," and the term should not be stretched to cover outside communications, consistent with the high court's reasoning.

The plain language of Exemption 8 is clearly intended to cover a wide array of material. The third element of Exemption 8 is that the government must demonstrate the information withheld is "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of" the agency. 5 U.S.C. 552(b)(8). The "related to" language casts a wide net of non-disclosure over any documents that are logically connected to an "examination, operating, or condition report." One purpose in enacting Exemption 8 "appears to have been to safeguard the relationship between the banks and their supervising agencies." *Consumers Union of U. S., Inc. v. Heimann,* 589 F.2d 531, 534 (D.C. Cir. 1978). Congress left no room for a narrower interpretation. If Congress intended the same result for Exemption 5, it would have done so.

Although the government urges the Ninth Circuit to follow the First, Second, Fourth, Fifth, Eighth, Tenth, and D.C. Circuits, all of which adopted the consultant corollary, those decisions were made before the Supreme Court started limiting application of FOIA exemptions to the text. *See Gov't Land Bank v. Gen. Servs. Admin.,* 671 F.2d 663, 665 (1st Cir. 1982); *Lead Indus. Ass'n Inc. v. OSHA,* 610 F.2d 70, 83 (2d Cir. 1979); *Hanson v. U.S. Agency for Intern. Dev.,* 372 F.3d 286, 292 (4th Cir. 2004); *Hoover v. U.S. Dep't of the Int.,* 611 F.2d 1132, 1138 (5th Cir. 1980); *Stewart v. U.S. Dep't of Int.,* 554 F.3d 1236, 1245 (10th Cir. 2009); *Ryan v. Dep't of Justice,* 617 F.2d 781, 790 (D.C. Cir. 1980). In *Milner v. Department of*

*the Navy*, the government persuaded the Ninth Circuit that "data and maps used to help store explosives at a naval base in Washington State" were materials "'related solely to the internal personnel rules and practices of an agency" protected under Exemption 2. *Milner v. Department of Navy,* 562 U.S. 562, 572 (2011). In 1981, the District of Columbia Circuit reconstituted Exemption 2, creating the so-called "High 2" exemption, which permitted the withholding the withholding of a broader range of materials, including government law enforcement training manuals. *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1075 (D.C. Cir. 1981). The inconceivable reading of straightforward statutory language persisted for thirty years. Barry Sullivan, FOIA and the First Amendment: Representative Democracy and the People's Elusive "Right to Know", 72 Md. L. Rev. 1, 74 (2012). In *Milner*, the Supreme Court unanimously rejected the government's argument, holding "Exemption 2 does not stretch so far." *Milner*, 562 U.S. 562, 565 (2011). The Supreme Court's strict reading of Exemption 2 is an example of how future FOIA cases should be treated.

The Court should thus maintain a strict, narrow interpretation of Exemption 5. *United States Dep't of Justice v. Julian,* 486 U.S. 1, 8 (1988) (interpreting Exemption 5 in accordance with "obligation to construe FOIA exemptions narrowly in favor of disclosure"). Like other FOIA exemptions, Exemption 5 "must be narrowly construed." *Rose, 425 U.S. 352*, 361 (1976); *Abramson, 456*

*U.S. 615,* 630 (1982) (reaching a "result [that] is consistent with the oft repeated caveat that FOIA exemptions are to be narrowly construed"); *United States Dep't of Justice v. Landano,* 508 U.S. 165, 181 (1993) (construing Exemption 7(D) "narrowly in favor of disclosure"). Exemptions 4 and 8 contemplate information from third parties, while Exemption 5 is limited to "inter-agency or intra-agency" communications. Exemption 5 applies only to records that originate and remain inside the government.

The legislative history supports a narrow reading. *U.S. v. Weber Aircraft Corp.,* 465 U.S. 792, 802 (1984) ("The legislative history of Exemption 5 does not contain the kind of compelling evidence of congressional intent that would be necessary to persuade us to look beyond the plain statutory language."). The Court "simply interpret[s] Exemption 5 to mean what it says." *Id.* at 804. If Congress intended Exemption 5 to extend to all "agency records," Congress would have used that term, rather than the narrower "inter-agency or intra-agency memorandums or letters."

The Sixth Circuit recently ruled in line with this principle. Discussing the language Congress incorporated into Exemption 5, the Court opined "Congress chose to limit the exemption's reach to 'inter-agency or intra-agency memorandums or letters,' 5 U.S.C. § 552(b)(5), not to 'memorandums or letters among agencies, independent contractors, and entities that share a common interest

with agencies.'" *Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541, 549 (6th Cir. 2017). While *Lucaj* concerned a foreign investigative agency, the Court nonetheless specified exactly what is covered by Exemption 5, and in doing so, rejected the adoption of the consultant corollary on the basis that a narrow reading of Exemption 5, in accordance with FOIA's original purpose, does not provide for the adoption of the consultant corollary doctrine. *Id.*

**III. Courts must consider that the foreseeable harm caused by secrecy will significantly outweigh any potential harm to general agency-contractor relations**

The FOIA Improvement Act of 2016 added language that agencies must determine whether the release of "particular documents" will cause foreseeable harm. 5 U.S.C. § 552(a)(8)(A)(i)(I) ("An agency shall withhold information under this section only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption."). The purpose of the amendments is to establish a "presumption of openness," and its passing was based on the recognition that "from the beginning, agencies have taken advantage of these exemptions to withhold any information that might technically fit." *Judicial Watch, Inc. v. U.S. Dept. of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019).

Courts must consider foreseeable harm following the enactment of the FOIA Improvement Act of 2016. In *Judicial Watch*, a federal agency disclosed hundreds

of emails and a substantial portion of them were redacted pursuant to Exemption 5. *Id.* at 96. The Court rejected the agency's Exemption 5 claims because the agency had not shown that it considered whether disclosure would cause foreseeable harm. The court noted that the government was required to do more than perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information. *Id.* at 100. The text and purpose of the Act both support a heightened standard for an agency's withholdings under Exemption 5. *Id*.

Exemption 5 protects documents from mandatory disclosure that fall within recognized "privilege[s] against discovery under judicial standards that would govern litigation against the agency that holds it." *Dept. of Int. v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001). If the record sought is not one routinely produced to the opposing party in the context of a lawsuit, then it can be withheld under Exemption 5. *Weber Aircraft Corp.,* 465 U.S. at 799.

However, the exemption can be distorted when an agency asks its own contractor for information in "anticipation of litigation." The improper classification of the biographical assessments permits an agency to offshore what would have been releasable information under FOIA, thus keeping important information from the public. It defies credulity to believe that an agency is unaware of its hiring practices but for documents created for the purpose of

litigation. Therefore, the "protected interest" here is not credible. FAA's unlawful expansion of Exemption 5 allows the agency to withhold more documents than Congress intended by characterizing ordinarily releasable information as undisclosable communications with a consultant. As a result, the consultant corollary runs counter to FOIA's policy favoring disclosure.

### IV. The consultant corollary should not prevent the public from accessing documents cloaked as confidential discovery.

The government is concerned the public will use the court's rejection of the consultant corollary to circumvent the government's claims of work product, attorney-client communication, or any other privilege by discovery rules even though the federal rules expressly bar discovery to those kinds of materials. *See* Fed. R. Civ. P. 26(b)(4)(D). Documents obtained through FOIA that are normally privileged would create an anomaly used to supplement civil discovery. *Weber Aircraft Corp.,* 465 U.S. 792, 801 (1984). The primary concern is that the court's rejection of the consultant corollary will possibly dissuade agencies from seeking helpful expertise from outside consultants. *See Rojas v. Fed. Aviation Administration*, 927 F.3d 1046, 1065 (9th Cir. 2019), reh'g en banc granted, 948 F.3d 952 (9th Cir. 2020). Nevertheless, the concern is outweighed by the public's need to know, especially when agencies employ consultants to enact and create policies that affect the public.

There is no reason to limit FOIA disclosure based on the rules of discovery when an agency is trying to conceal something like its own internal hiring policies, rather than truly privileged litigation materials. In this case, APTMetrics played a crucial role in FAA's hiring process for Air Traffic Control Specialists and validated the revisions the FAA made to the BA. Since the hiring process for Air Traffic Control Specialists is important, the procedure should not be hidden from public scrutiny. Whereas litigation revolves around one case, precluding disclosure by means of discovery, FOIA promotes transparency, integrity, and accountability. FOIA's central purpose is to open agency action to the light of public scrutiny in order to help ensure an informed citizenry, vital to the functioning of a democratic society. *Tax Analysts,* 492 U.S. 136, 142 (1989). Protecting agencies from releasing what they do not have to disclose in discovery under FOIA is not an important concern in the present context.

**CONCLUSION**

For the foregoing reasons, *Amici* ask this Court to limit FOIA Exemption 5

to the plain meaning of the text and reverse the District Court's decision.

Respectfully submitted,

/s/ Gregg P. Leslie
Gregg P. Leslie
    *Counsel of Record*
Samuel Turner*
John Dragovits*
First Amendment Clinic,
    Arizona State University
    Sandra Day O'Connor
    College of Law
111 E. Taylor St., Mailcode 8820
Phoenix, AZ 85004
(480) 727-7398
* Law students appearing pursuant to
  Cir. R. 46-4

Date: March 5, 2020

**CERTIFICATE OF COMPLIANCE**

This brief contains 3,352 words, excluding the items exempted by Fed. R. App. P. 32(f), and complies with the word limit of Fed. R. App. P. 29(a)(5) and Cir. R. 29-2(c)(3).

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

/s/ Gregg P. Leslie
Gregg P. Leslie, Counsel of Record

Date: March 5, 2020